STATE OF IOWA v. GEORGE BRADBURY, Appellant.

**Practice.** Where prosecutrix makes affidavit that defendant did not seduce her, testifies to the contrary on the trial, and facts appear from which it is a permissible inference that the affidavit was obtained by duress, the whole question is one of veracity, and for the jury.

**Corroboration.** Where a jury is warranted in a finding that defendant wrote unsigned letters which corroborated the claim of seduction made, this is sufficient statutory corroboration.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

THURSDAY, DECEMBER 13, 1894.

THE defendant was indicted, tried, and convicted for the crime of seduction, and he appeals.—*Affirmed.*

*A. A. Haskins* for appellant.

*John Y. Stone,* attorney general, and *Thomas A. Cheshire* for the state.

ROTHROCK, J.—The alleged seduction is claimed by the state to have occurred in the month of June, 1892. The defendant is a married man, and the complaining witness is an orphan. She was fifteen years old at the time of the trial in the court below, and the trial occurred in December, 1892. She was living as a domestic in the family of one McMeekin, next door to the residence of the defendant. Defendant's wife and children went away on a visit, and the claim of the state is that, shortly after her departure, the defendant set himself about the business of seducing the orphan child. Her name is Jennie Hall. No question is made as to her previous character. She was a member of the Christian church, and an attendant at Sunday

school. She belonged to a Good Templars' lodge. She was a regular attendant at church, Sunday school, and lodge. She claims that she was seduced by the defendant, and that the first time he accomplished his purpose was in the night, in the barn on the lot where the defendant lived. Her account of the affair is that, as she was on her way to a meeting of the Good Templars' lodge, she was overtaken on the sidewalk by the defendant, and that he induced her to abandon her purpose to attend lodge, and go walking with him; that she "begged to go on down to the lodge;" and that she said a good many times that she did not want to go to the barn.

The first proposition made by counsel for appellant is that the crime, if any, was rape, and not seduction. Some of the answers made by the child on cross-examination, in response to leading questions, if taken alone, seem to indicate that force was used. There was a controversy about the correctness of the abstracts in the case, which compelled us to resort to the transcript of the evidence as taken by the shorthand reporter on the trial. We discarded the abstracts, and have carefully read the whole of the transcript. The prosecuting witness was examined, cross-examined, and re-examined a great many times, with all the repetition of questions usually made in such cases. No juror, after hearing her whole examination, would entertain a thought that there was any such force used as would constitute rape. If her account of the matter is true, she did not go to the barn by force. She knew by the persuasion and promises made by the defendant that the purpose in going to the barn was for sexual intercourse. When the court interfered with the examination, and she was allowed to detail what was done when they went to the barn, which it is not proper to repeat here, there was no element of rape.

It is insisted that there is no evidence corroborating the complaining witness.  There is one peculiarity in the case not common to cases of this kind. The complaining witness did not become pregnant.  She claims that the defendant had sexual intercourse with her some four or five times.  She produced a number of unsigned letters, which she claims to have received from the defendant at about the time of these illicit relations.  The defendant denied that he was the author of the letters. · That question was submitted to the jury.  These letters have been certified to this court, together with a specimen of the defendant's handwriting, which he wrote, at the request of the county attorney, upon the trial.  The defendant also introduced another letter, which he claimed to have written to his wife at about the time of this trouble.  This last letter was of no consequence of itself. It was introduced as a specimen of the defendant's handwriting, to disprove the authorship of the letters which the state claims he wrote to the prosecutrix.  It is to be supposed that the jury found that the defendant was the author of the letters in dispute.  We think that such a finding was fully authorized from the comparison of the writings, and from other evidence in the case which shows that the defendant was infatuated with the child.  She left the service of McMeekin, and went to live at another place.  Witnesses testified that he followed her up, and was ordered away from the house.  One witness stated that defendant came to the mill of the witness, and inquired for the girl, and wanted to know where she was, and said his name was Brown.  There are other corroborative facts and circumstances not necessary to relate.  It is conceded by counsel for appellant that if. the defendant was the author of the disputed letters the complaining witness was fully corroborated as to the fact of sexual intercourse; and an examination of the whole record, when

taken in connection with the tender years of the prosecuting witness, satisfies us that her testimony was fairly corroborated on every material feature of the case.

It is urged that the prosecuting witness should not be believed because about a month before the trial she made an affidavit that the defendant did not seduce her, and that the charge in the indictment was untrue. It is true she signed such an affidavit. But the jury were fully authorized in finding that she was induced to do so by threats and promises made by the defendant.

No error is claimed other than the insufficiency of the evidence to sustain the verdict. We think it was ample, and the judgment is AFFIRMED.